## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **GREG WILLIAMS,** individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:10-CV-0698-L** |
| **GLOBAL PAYMENTS CHECK SERVICES, INC.,** | § § § | |
| Defendant. | § § | |

### MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Second Motion to Dismiss, filed April 22, 2011.  After carefully considering the motion, response, reply, appendix, and applicable law, the court **grants** Defendant's Second Motion to Dismiss.

## I.      Factual and Procedural Background

On March 18, 2009, Greg Williams ("Williams" or "Plaintiff") wrote check number 7287 to Lids at North Park in Dallas, Texas.[*]  The check was dishonored when presented to Williams's bank by Lids at North Park.  After the check was dishonored, Lids at North Park assigned the debt created by Williams's dishonored check to Global Payments Check Services, Inc. ("Global" or "Defendant"), a debt collection company.

Global sent a letter, dated April 7, 2009, to Williams advising him that his check to Lids at North Park had been dishonored, that the debt had been assigned to Global, that he now owed Global

---

[*]The court sets forth facts from Plaintiff's Second Amended Class Action Complaint in relation to the dishonor of his check, as they are well-pleaded factual allegations and provide background information necessary to the court's analysis.

**Memorandum Opinion and Order – Page 1**

the amount of the dishonored check plus a $30 "service charge" ("NSF fee"), and that his check had been submitted for electronic re-presentment by Global.   On April 10, 2009, Williams's check cleared his bank account upon electronic re-presentment.   On April 21, 2009, Williams contacted Global, as directed in the April 7, 2009 letter, and paid directly to Global the $30 NSF fee that remained outstanding.

On April 6, 2010, Plaintiff filed his Original Class Action Complaint against Defendant. Williams contends Global violated the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code § 392.303(a)(2), and the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.01 *et seq.*, by collecting an unreasonable service charge for dishonored checks.   Plaintiff filed his First Amended Class Action Complaint on June 25, 2010.   On March 30, 2011, after considering Plaintiff's Motion for Class Certification, filed July 6, 2010; Defendant's Motion to Dismiss, filed July 28, 2010; and Plaintiff's Motion for Leave to File a Second Amended Class Action Complaint, filed October 12, 2010, the court permitted Plaintiff an opportunity to file an amended pleading to overcome the deficiencies raised in Defendant's Motion to Dismiss.   The court also allowed Defendant to file a second motion to dismiss.   Williams filed Plaintiff's Second Amended Class Action Complaint ("Complaint") on April 4, 2011.   Thereafter, Defendant filed its Second Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff's Complaint does not state a claim upon which relief can be granted.   Defendant's motion is ripe for review.

## II.   Legal Standard for Motion to Dismiss

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

## III.    Analysis

Plaintiff asserts three claims against Defendant:(1) violation of the FDCPA, which prohibits the use, by a debt collector, of any unfair or unconscionable means to collect or attempt to collect any debt; (2) violation of the TDCA, which also prohibits the use, by a debt collector, of any unfair or unconscionable means to collect or attempt to collect any debt; and (3) knowing and/or intentional commission of an act in violation of the DTPA. The crux of Plaintiff's claims is that Defendant charged Plaintiff and other similarly-situated individuals an unreasonable service fee for a dishonored check. Defendant argues Plaintiff's claims are unsupported by sufficient allegations of fact that, if accepted as true, would give rise to an actionable claim.

In *Twombly* and *Iqbal*, the Court discussed the elements a plaintiff must plead to assert his claim. Here, too, the court begins by taking note of the elements of Plaintiff's claims. The FDCPA prohibits the use of "unfair or unconscionable means" by a debt collector "to collect or attempt to collect any debt." In particular, the relevant provision states that the following conduct constitutes a violation: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.A. § 1692f(1) (West 2009). "Whether the collection of a debt violates Section 1692f(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law. *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003). Plaintiff's FDCPA claim focuses on the latter—that Defendant's service charge is not permitted by state law. *See* Compl. at 7, ¶ 28.

The TDCA, prohibits the use, by a debt collector, of any "unfair or unconscionable" means to collect a debt or attempt to collect any debt. Specifically, the relevant provision states:

(a) In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices:

(2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]

Tex. Fin. Code Ann. § 392.303(a)(2) (West 2006). Section 3.506 of the Texas Business and Commerce Code states:

On return of a payment device to the holder following dishonor of the payment device by a payor, the holder, the holder's assignee, agent, or representative, or any other person retained by the holder to seek collection of the face value of the dishonored payment device may charge the drawer or indorser a reasonable processing fee of not more than $ 30.

Tex. Bus. & Com. Code Ann. § 3.506(b)(West Supp. 2010).  Thus, the elements under Texas law

are similar to federal law and depend on two factors: (1) whether the debt agreement creating the

obligation authorizes the charge; or (2) whether the charge is permitted by law.  Texas law permits

the debt collector to charge a reasonable processing fee of not more than $30.  Violations of Chapter

392 of the TDCA are actionable under the DTPA.  Tex. Fin. Code Ann. § 392.404(a) (West 2006).

        The court turns next to its analysis of the sufficiency of Plaintiff's allegations.  The Supreme

Court interprets its decision in *Twombly* as applying a two-pronged approach.  First, while a court

must accept as true all the allegations contained in a complaint, this tenet is inapplicable to legal

conclusions.  *Iqbal*, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Id.*  Thus, "a court considering a motion

to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the  assumption of truth."  *Id.* at 1950.  "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  "When

there are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief."  *Id.*  Second, considering, the remaining

well-pleaded factual allegations, the court must determine whether the complaint states a plausible

claim for relief.  *Iqbal*, 129 S. Ct. at 1950.  This is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.*  The court considers

Plaintiff's allegations in light of this two-pronged approach.

### A.      Identifying Conclusory Statements

        The court does not "presume true a number of categories of statements, including legal

conclusions; mere labels; [t]hreadbare recitals of the elements of a cause of action; conclusory

statements; and naked assertions devoid of further factual enhancement." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (internal quotations omitted) (citations omitted). The court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted).

Plaintiff's factual allegations are contained in paragraphs 6 though 12 of the Complaint. Paragraph 11 is key, as it contains the allegations of the misconduct for which Defendant is purportedly liable. Paragraph 11 states:

> Electronic re-presentment is a computerized, automated means of re-submitting a check that failed to clear upon initial presentation to a consumer's bank account for payment. Given the automated nature of the process, it allows for the transaction to occur at a nominal cost. When compared to the $30 NSF Fee charged to the Plaintiff by Defendant, the charge grossly exceeds the cost actually incurred by the Defendant in handling the dishonored check. While at one point in time, there may have been a cost associated with handling a dishonored check, the technological advancements relating to electronic re-presentment have nearly eliminated any cost associated with the type of a transaction. Notwithstanding the aforementioned, Defendant has chosen to convert this process into a profit center by charging the $30 NSF cap contained in the statute, despite the fact that such cap is grossly disproportionate to the actual cost incurred by Defendant. Under the facts of this case, the $30 NSF fee collected by Defendant is not a reasonable fee as permitted by law.

Compl. at 3, ¶ 11.

Plaintiff argues that his Complaint clearly states that Defendant charged the maximum processing fee allowed by law, which is unreasonable based on the nominal cost to Defendant of electronic re-presentment. Pl.'s Resp. at 6-7. Plaintiff states a cognizable legal theory by which Defendant allegedly violated the law; however, Plaintiff does not support his legal theory with sufficient factual allegations.

Upon careful review of paragraph 11, the court determines Plaintiff has alleged unwarranted factual inferences, naked assertions devoid of further factual enhancement, and conclusory

statements, which the court cannot accept as true.  The second sentence of paragraph 11 states: "Given the automated nature of the process, it allows for the transaction to occur at a nominal cost." Compl. at 3, ¶ 11.  Plaintiff proffers no factual allegations to support his assertion that the electronic re-presentment of a check occurs at a nominal cost to Global.  Plaintiff makes the unwarranted factual inference  that because the process is automated, the cost to Global is nominal.  *See also* Compl. at 3, ¶ 11, Sent. 4. ("While at one point in time, there may have been a cost associated with handling a dishonored check, the technological advancements relating to electronic re-presentment have nearly eliminated any cost associated with the type of a transaction.")  Plaintiff also unnecessarily assumes that the determination of a reasonable fee must be confined to a comparison of the NSF fee and the cost of re-presentment of a particular check.  Global argues that Plaintiff failed to allege the costs of acquiring the debt at issue, the cost of collection of the NSF fee itself, and the cost of maintaining the infrastructure required for collection of delinquent accounts and electronic re-presentment of dishonored checks.  Def.'s Br. at 7.  Global also argues Plaintiff failed to allege that Global's NSF fee "unreasonably" offsets the losses it suffers as a result of the percentage of checks that do not clear upon electronic re-presentment.  Def.'s Reply at 7.  Without setting forth the factual basis for his assertions, Plaintiff's allegations that Global's transaction costs are nominal amount to naked assertions devoid of factual enhancement and are not entitled to the assumption of truth.

The third sentence of paragraph 11 states: "When compared to the $30 NSF Fee charged to the Plaintiff by Defendant, the charge grossly exceeds the cost actually incurred by the Defendant in handling the dishonored check."  Compl. at 3, ¶ 11.  This statement builds on the previous statement that Global's transaction costs are nominal.  Plaintiff proffers no factual allegations to

explain or set forth the actual costs incurred by Defendant.  Plaintiff proffers no factual allegations explaining the manner in which the NSF fee "grossly exceeds" the actual costs incurred by Defendant.  Plaintiffs statements are conclusory statements couched as factual allegations, and the court cannot  presume their truth.  The remaining sentences of paragraph 11 cannot be confused for factual allegations, as they characterize or label Defendant's "process" as a "profit center" and Defendant's NSF fee as unreasonable.  The court cannot presume labels or legal conclusions as true. *Morgan*, 659 F.3d at 370.

Plaintiff asserts further allegations in his complaint with respect to the "unreasonable" fee charged by Defendant for dishonored checks.  *See, e.g.,* Complaint ¶¶ 12, 14, 28, 31, 36.  Such allegations, however, are mere recitals of the elements of a cause of action and are unsupported by factual allegations.

### B.      Identifying A Plausible Claim

The court next considers the remaining well-pleaded factual allegations to determine whether the Complaint states a plausible claim for relief.  The court restated in section I of this opinion Plaintiff's factual allegations as set forth in his Complaint, excluding paragraph 11, set forth in section III(A), and paragraph 12, which the court determines contains conclusory statements. Plaintiff's well-pleaded factual allegations explain that Williams tendered a check to Lids at North Park; the check was dishonored; the debt was assigned to Global; Global requested from Defendant the amount of the dishonored check plus a $30 service charge; the check was submitted for electronic re-presentment by Global; the check cleared Williams's account upon re-presentment; Williams tendered to Global the outstanding $30 NSF fee; and electronic re-presentment is an automated process.  These factual allegations do not, however, establish or support Plaintiff's claims

that Defendant charged an unreasonable fee in violation of state or federal law.  After disregarding the conclusory allegations of the unreasonableness of Defendant's fee, which are forbidden by *Twombly* and *Iqbal*, what remains of Plaintiff's allegations is insufficient to state a plausible claim for violations under the FDCPA, TDCA, or DTPA.

Plaintiff asserts that Defendant's request for dismissal is based upon Defendant's erroneous interpretation of Texas law as establishing a statutorily allowed $30 fee for collecting dishonored checks.  Pl.'s Resp. at 7.  As mentioned above, Texas law allows for the imposition of a "reasonable fee" not to exceed $30.  Defendant would have the court read the statute as imposing a single requirement for the imposition of a fee: that the fee not exceed $30.  Def.'s Br. at 10.  Plaintiff, on the other hand, encourages the court to read the statute as imposing two requirements of any imposed fee: (1) that the fee be reasonable , *and* (2) that it not exceed $30.  Pl.'s Resp. at 7.  Plaintiff's view is based on his theory that Global's fee is unreasonable and prohibited by state law when compared to its actual costs incurred in processing dishonored checks.  *See* Compl. at 8, ¶ 31.  Defendant's view is that a fee of $30 is reasonable as a matter of law.  The court finds it unnecessary to interpret whether any fee up to and including $30 fee is reasonable as a matter of law, as it determines Plaintiff has not provided adequate factual support for its allegations that Global's actual costs are nominal and that Global's NSF is unreasonable in comparison to those costs.

Plaintiff also asserts that other courts have found a fact issue presented by the requirement of "reasonableness" in this context.  Pl.'s Resp. at 7.  The court does not determine whether there is a "fact issue."  "At this stage, the court ***only*** tests the sufficiency of the pleadings, namely, whether there is a plausible basis for the claims asserted."  *Bynari, Inc. v. Alt-N Techs.*, Ltd., 2008 WL 4790977, at * 7 (N.D. Tex. Oct. 24, 2008) (Lindsay, J.) (emphasis in original); *see also*

*Evanston Ins. Co. v. Tonmar, L.P.,* 669 F. Supp. 2d. 725, 730 (N.D. Tex. 2009) ("Motions filed under Fed. R. Civ. Pro. 12(b)(6) and 12(c) are designed to test the sufficiency of the pleadings . . . ."). Whether a fact issue exists is determined in the context of a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. As the court only considers the sufficiency of the pleadings at this stage, the court declines to address Plaintiff's argument.

Plaintiff asserts that he does not have "at his fingertips all data necessary to answer every question regarding the actual cost to the Defendant to process a re-presented check," and one cannot expect him to be "familiar with every detail of how [Global] conducts its business without the benefit of any discovery." Pl.'s Br. at 9. While discovery typically reveals additional facts regarding a cause of action, pre-lawsuit discovery, however, should reveal the factual bases for asserting a cause of action, ensure a pleading does not violate Federal Rule of Civil Procedure 11, and establish sufficient factual allegations to state a claim upon which relief can be granted. The bases for establishing claims should be determined well before the suit is filed. Plaintiff "puts the cart before the horse." In our system of jurisprudence, litigants do not file lawsuits hoping discovery will reveal the factual bases for a claim.

"Plausibility" is required at the pleading stage because of the cost and burden of discovery. The Court aptly stated in *Twombly*: "Probably, then, it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support a § 1 claim." *Twombly*, 550 U.S. at 559 (citation omitted). Furthermore, in *Iqbal*, the court ruled that "the question presented by a motion to dismiss for insufficient pleadings does not turn on the controls placed on the discovery process." 129 S. Ct. at

**Memorandum Opinion and Order – Page 11**

1953.  "Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."  *Id.* at 1954.

The court determines, after removing Plaintiff's conclusory allegations and assuming that all of the well-pleaded factual allegations in the Complaint are true, the Complaint fails to raise Plaintiff's right to relief above the speculative level.  The court cannot reasonably infer from the Complaint that Global is liable for the misconduct alleged.  Plaintiff's Complaint is therefore deficient under Rule 8 and unable to survive a Rule 12(b)(6) motion to dismiss.

## IV.    Amendment of Pleadings

The Complaint represents Plaintiff's third attempt to state a claim upon which relief can be granted.  In deciding whether to allow further amendment of pleadings, the court considers such factors as undue delay in the proceedings, undue prejudice to the opposing party, timeliness of the amendment, failure to cure prior deficiencies, and futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Southmark Corp.*, 88 F.3d 311, 314-315 (5th Cir. 1996) (citation omitted). Plaintiff has had "three bites at the apple" and has failed to cure prior deficiencies to state a claim upon which relief can be granted.  Once "a plaintiff has had fair opportunity to make his case" but fails to do so, the court should dismiss the action.  *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).  The court believes that permitting any further attempts to amend pleadings would be an inefficient use of the parties' and court's resources, would cause unnecessary and undue delay, and would be futile.  Accordingly, the court will not permit any further attempts to amend Plaintiff's pleadings, and dismissal of the claims is appropriate.

## V.     Conclusion

For the reasons herein stated, Plaintiff's Complaint fails to state a claim upon which relief can be granted.  Accordingly,  the court **grants** Defendant's Second Motion to Dismiss Plaintiff's claims for violations under the Federal Fair Debt Collection Practices Act, the Texas Debt Collection Act, and the Texas Deceptive Trade Practices Act; and it **dismisses** these claims **with prejudice**.  The court will issue a judgment by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 14th day of December, 2011.

Sam A. Lindsay
United States District Judge